

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| JESUS CABRERA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.1:07-CV-180-TH |
| | § | JURY |
| NATIONAL RESPONSE CORPORATION, and | § | |
| OIL MOP LLC, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER GRANTING DEFENDANT OIL MOP'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is *Defendant Oil Mop LLC's Motion for Summary Judgment* [Clerk's Docket No. 24], filed November 10, 2007.  Having considered the motion, the responsive pleadings, and the applicable law, the Court is of the opinion that the motion should be granted.

I. FACTUAL & PROCEDURAL BACKGROUND

This lawsuit involves a claim for personal injuries sustained by Plaintiff Jesus Cabrera ("Cabrera" or "Plaintiff") while working for Oil Mop LLC ("Oil Mop") aboard the ADMIRAL, a vessel owned by defendant National Response Corporation ("NRC" or "Defendant").

NRC was hired to clean an oil spill in the Gulf of Mexico caused by the sinking of a barge during Hurricane Rita.  NRC then contracted with defendant Oil Mop to supply laborers to assist with this clean-up project.  The ADMIRAL was dispatched to remediate the oil spill November 13, 2005.  Its crew included Cabrera and four other Oil Mop employees.

Upon arriving at the spill site, NRC employee Kim Folse informed the rest of the crew that of they would be using the ship's crane to lift an inflatable vessel off the deck of the ADMIRAL in order

to place it on the water.  Folse then operated the crane, lifting the boom out of its cradle and spooling out cable.  In doing so, it became apparent that there was no "tag line" attached to the cable.  At that time, Cabrera went to the upper deck of the ADMIRAL, and attempted to attach the tag line.  He climbed onto a box and reached for the cable.  Cabrera claims that at that time the wind and seas caused the ship to pitch.  Cabrera lost his balance and fell ten to twelve feet to the lower deck, injuring his arm and wrist.

Cabrera filed suit against NRC and Oil Mop in the 172nd Judicial District in the District Court of Jefferson County, Texas on May 19, 2006.  NRC subsequently removed the case to this Court.  On July 19, 2007, this Court dismissed Cabrera's Jones Act and unseaworthiness claims, finding that he was not a seaman.  Plaintiff then filed his First Amended Complaint, alleging that NRC and Oil Mop were negligent in the following respects:

> "(1) failing to provide a safe place to work; (2) failing to maintain the appurtenances of the vessel in a safe manner; (3) failing to stop the movement of the vessel at the time it was lowering the float boat; (4) initiating the lowering of the float boat in seas that were too rough under the circumstances; (5) in directing plaintiff to climb up on the vessel when it (*sic*) not safe to do so; (6) in failing to properly plan the operation; (7) in failing to have sufficient manpower to safely complete the operation; (8) in failing to have proper equipment necessary to safely complete the operation; (9) in failing to properly supervise the operation; and (10) in retaining control over the work to such an extent that these defendants' conduct increased the likelihood of injury and in failing to exercise such control with reasonable care under the circumstances."  (Pl.'s First Amended Complaint at 3-4)."

Oil Mop now moves for summary judgment on these claims, arguing that because Cabrera was its employee at the time of his injury, he is prohibited by 33 U.S.C. § 901-50, the Longshore and Harbor Workers' Compensation Act ("LHWCA"), from bringing a negligence action against Oil Mop.

## II. LEGAL STANDARD

Summary judgment is proper when, after viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. P. 56(c).  If the moving party establishes the absence of any genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  Conclusory allegations, unsubstantiated assertions, and mere scintillas of evidence do not satisfy this burden. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)(per curium). Summary judgment is proper where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Washington v. Armstrong World Industries*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. But the court is not obligated to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996).  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 112 S.Ct. 2072, 2083 (1992).

### III. DISCUSSION

The LHWCA provides the exclusive remedy against an employer for employee injured on the navigable waters of the United States.  33 U.S.C. § 903(a), 905(a).  Therefore, Oil Mop's motion for summary judgment argues that the LHWCA bars Cabrera from maintaining a negligence action against his employer, Oil Mop.

Cabrera was Oil Mop's Employee

In his response to the motion, Cabrera asserts that there is a question of fact as to whether he was actually an employee of Oil Mop.  (Pl.'s Resp. to Def. Oil Mop's Mot. for Summ. J. at 3).  The Court finds this claim somewhat puzzling, since the undisputed summary judgment evidence shows (1) that NRC contracted with Oil Mop to supply laborers for its clean-up project; (2) that Oil Mop supplied five of its employees for the job; and (3) that one of those employees was Cabrera.  Cabrera's own testimony shows that at the time of his injury he had been employed by Oil Mop for three years:

Q:      "When did you start working for Oil Mop?
A:      It was approximately–well, I had been working for them for three years.  I started on December (*sic*), but I don't remember the date.
Q:      Had you been working at Oil Mop for three years before 2005?
A:      Yes."  (Def.'s Mot. for Summ. J., Ex. 3, Cabrera Depo. at 28)

Further, Cabrera received Louisiana workers' compensation benefits from Oil Mop for approximately one year after his injury.  (Def.'s Mot. for Summ. J., Ex. 3, Cabrera depo. at p. 17, line 24 through p. 18, line 4).

These facts notwithstanding, Cabrera argues that "[t]here is a question of fact as to whether [he] was an employee of Oil Mop, since he was neither supervised or trained by Oil Mop, was not working with Oil Mop's equipment, and was not working on Oil Mop's vessel."  The basis for this assertion is unclear.  Cabrera cites no legal authority to explain why any of these facts, assuming they are true, would create a fact issue about who employed Cabrera.

For the foregoing reasons, the Court finds that Cabrera was clearly an Oil Mop employee at the time of his injury.

Cabrera was an "employee" under the LHWCA

The LHWCA provides for payment of compensation for injuries to an "employee" that occur upon the navigable waters of the United States.  33 U.S.C. § 903(a).  An "employee" under the LHWCA is "any person engaged in maritime employment, including any longshoreman, or other person enganged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-

4

breaker."[1]   33 U.S.C. § 902(3).   By this definition, Cabrera qualifies as an "employee" under the LHWCA.

The LHWCA is Cabrera's Exclusive Remedy

Once an injured worker is found to be an "employee" engaged in "maritime employment" at the time of his injury, his sole remedy is found under the LHWCA.  *Vogelsang v. Western Maryland Railway*, 670 F.2d 1347, 1348 (4ᵗʰ Cir. 1982).  Section 905(a) of the LHWCA prohibits an employee from bringing an additional negligence claim against his employer.  33 U.S.C. § 905(a).  It flatly states that the liability of an employer under the LHWCA "shall be exclusive an in place of all other liability." *Id.*

However, "if an employer fails to secure payment of compensation as required by this chapter, an injured employee...may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury." *Id.*  So, the question for this Court is whether Oil mop secured payment of compensation as required by the LHWCA.

Whether Oil Mop secured such payment is determined by whether it maintained appropriate insurance coverage.  "By the structure of the Act, the reference in § 905 to an employer who 'fails to secure payment of compensation as required by this chapter' relates to the specific provision in 932 which prescribes how and in what manner an employer shall comply with the obligation to secure payment of compensation." *Thibodeaux v. J. Ray McDermott & Co., Inc.*, 276 F.2d 42, 46 (5ᵗʰ Cir. 1960).  Section 932 requires every employer to secure payment of compensation under the LHWCA by securing approval as a self-insurer, or:

> "By insuring and keeping insured the payment of such compensation with
> any stock company or mutual company or association, or with any other person or

---

[1]Subsections (A) through (H) of 33 U.S.C. § 902(3) list exceptions to the definition of the term "employee."  Subsection (G) specifically excludes "a master or member of a crew of any vessel."  The Court notes that although Cabrera was working aboard the ADMIRAL, he does not qualify as a "member of a crew" under Section 902(3)(G).  The Test to determine "member of the crew status under the LHWCA is the same as the test for "seaman" status under the Jones Act. *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 266 (5ᵗʰ Cir. 1991).  Since this court already determined in its July 19, 2007 order that Cabrera is not a Jones Act "seaman," he is likewise not a "member of a crew" under the LHWCA.  Further, none of the other Section 902(3) exceptions are applicable to Cabrera.

fund, while such person or fund is authorized (A) under the laws of the United States or of any State, to insure workmen's compensation, and (B) by the Secretary, to insure payment of compensation under this chapter." 33 U.S.C. § 932(a)(1).

Oil Mop submits credible evidence that it maintained an insurance policy cover with American Home Assurance Co. (AIG), covering LHWCA claims, at the time of Cabrera's injury. By doing so, Oil Mop "secure[d] payment of compensation" as required by the LHWCA. 33 U.S.C. § 905(a); 33 U.S.C. 932(a)(1). Consequently, Section 905(a) of the LHWCA prevents Cabrera from bringing a negligence claim against Oil Mop.

## IV. CONCLUSION

Having considered the motion, the responsive pleadings, and the applicable law, this Court finds that, as a matter of law, Cabrera cannot maintain his negligence claims against Oil Mop. Therefore, Oil Mop's *Motion for Summary Judgment* should be granted.

## V. ORDER

**IT IS THEREFORE ORDERED** that *Defendant Oil Mop LLC's Motion for Summary Judgment* [Clerk's Docket No. 24] is in all things **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Oil Mop LLC are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

**SIGNED** this the 4 day of **April, 2008.**

_____
Thad Heartfield
United States District Judge

6